UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS

_____
                              )
JULIE ANN BARRETT,            )
            Plaintiff,        )
                              )
        v.                    )       CIVIL ACTION
                              )       NO. 16-12551-WGY
TOWN OF PLAINVILLE,           )
                              )
            Defendant.        )
_____)

YOUNG, D.J.                                      September 27, 2017

**MEMORANDUM & ORDER**

**I.    INTRODUCTION**

Plainville Police Department Patrolman Julie Ann Barrett ("Barrett") brings a section 1983 claim against the Town of Plainville ("Plainville") for the involvement of Plainville Police Chief Alfred ("Alfred") in the search and seizure of Barrett's personal cell phone in connection with North Attleborough's internal investigation of another police officer. Plainville has now moved for summary judgment.

   **A.   Procedural History**

Barrett initially filed a complaint in the Norfolk Superior Court on November 15, 2016, asserting three counts: (1) a section 1983 claim against Plainville, Alfred, and Lieutenant Floyd ("Floyd") (count I); (2) a violation of Massachusetts General Laws chapter 12, sections 11H and 11I against Alfred and

Floyd (count II); and a violation of Massachusetts General Laws chapter 214, section 1B against North Attleborough's Police Department Captain Joseph DiRenzo ("DiRenzo") and Chief John Reilly ("Reilly"), as well as John and Jane Doe (count III). Notice Removal, Ex. A, Compl. ("Compl."), ECF No. 1-1. After the case was removed to this Court, Notice Removal 1, ECF No. 1, and various defendants moved for dismissal of the claims against them, Mot. North Attleborough Defs. Dismiss Pl.'s Compl. Rule 12(b)(6), ECF No. 9; Defs., Town Plainville, James Alfred & James Floyd's Mot. Dismiss Pl.'s Compl. Fed. R. Civ. P. 12(b)(6), ECF No. 12, this Court heard oral arguments, Electronic Clerk's Notes, ECF No. 22, and dismissed counts I and II solely as to Alfred and Floyd, Order, ECF No. 23. Barrett subsequently dismissed her claims against John and Jane Doe, Notice Voluntary Dismissal, ECF No. 43, and Reilly and DiRenzo, Stipulation Dismissal, ECF No. 51.

Plainville now moves for summary judgment on count I. Def. Town of Plainville's Mot. Summ. J., ECF No. 39. The parties briefed the issues and filed supporting statements of facts. Pl. Julie Barrett's Opp'n Def. Town Plainville's Mot. Summ. J. ("Pl.'s Opp'n"), ECF No. 48; Pl. Julie Barrett's Statement Material Facts Supp. Opp'n Town Plainville's Mot. Summ. J. ("Pl.'s Facts"), ECF No. 48-1; Def. Town of Plainville's Mem. Law Supp. Mot. Summ. J. ("Def.'s Mem."), ECF No. 40; Def. Town

[2]

Plainville's Statement Undisputed Material Facts Supp. Mot. Summ. J. ("Def.'s Facts"), ECF No. 41. On September 14, 2017, this Court heard oral argument and took the matter under advisement. Electronic Clerk's Notes, ECF No. 55.

**B.  Undisputed Facts**

Barrett is employed as a police officer for the Town of Plainville. Compl. ¶ 1; Def.'s Facts ¶ 1. On July 30, 2016, there was an alleged incident in which Sergeant David Gould ("Gould") of the North Attleborough Police Department punched Detective James Moses ("Moses") of the Plainville Police Department and also committed domestic assault and battery against Barrett. Compl. ¶¶ 23-24; Def.'s Facts ¶ 2.

On August 9, 2016, State Troopers Edward Keefe ("Keefe") and Yuri Bukhenik ("Bukhenik") investigated the alleged assault and battery. Pl.'s Facts ¶ 7; Def.'s Facts ¶ 4. Following Barrett's declining to discuss the incident with Keefe, Def.'s Facts ¶¶ 5-7, Keefe and Bukhenik then went to the Plainville Police station where they explained to Floyd that they would like to ask Barrett some questions and look at her phone, id. ¶¶ 8-9. Floyd had Barrett called off of patrol and into the station, id. ¶ 10, where Keefe and Bukhenik told Barrett that they wanted to discuss the alleged domestic violence incident. Id. ¶¶ 11-12. Barrett, however, again indicated that she had nothing to say, Pl.'s Facts ¶ 2; Def.'s Facts ¶ 13.

Keefe asked Barrett if he could take a look at her cell phone, but Barrett said no. Def.'s Facts ¶ 14. Keefe then told Barrett that they needed to take her cell phone as evidence, Pl.'s Facts ¶ 2; Def.'s Facts ¶ 15, and that if she did not give her cell phone over voluntarily, they would get a warrant, Def.'s Facts ¶ 21, and leave Barrett without her cell phone for a much longer period of time, id. ¶¶ 16, 19. Barrett said she was inclined to have them get a warrant. Id. ¶ 20. Barrett told the state troopers that her phone was in her police cruiser and that she wanted to make some calls. Id. ¶ 22.

The troopers let Barrett go to her cruiser and make phone calls. Id. ¶ 23. During this time, Barrett received a call from Moses, who told her that Floyd had called Alfred and said that Barrett was being uncooperative, and that Alfred was going to the Plainville Police station to get Barrett to cooperate. Id. ¶¶ 24-25. Moses told Barrett that he was with Alfred, id. ¶ 35, and had told Alfred that he would call and talk to Barrett, id. ¶ 26. Barrett told Moses that Floyd, Keefe, and Bukhenik were trying to take her phone. Id. ¶ 28. Moses told Barrett, "they can," and that "they" already had his phone. Id. ¶¶ 29-30. He encouraged Barrett to hand over her phone, saying "Don't lose your job over this," and "You have to cooperate in an internal investigation." Id. ¶¶ 31-32. Moses lied to Barrett by telling her that she had to cooperate and reinforced

[4]

Barrett's belief that there was an internal investigation by saying that she could lose her job. Id. ¶¶ 33-34.

Barrett told Floyd that she wanted to speak with a union attorney; Floyd responded that the attorney said that Barrett had to cooperate. Id. ¶ 36. Barrett handed her cell phone over, id. ¶ 37, because of Floyd's statement that the union attorney said she had to cooperate and Floyd's and Alfred's directives, Pl.'s Facts ¶ 6. Floyd went back into the police station and the state troopers took the phone, asked Barrett to sign a form, then drove away. Def.'s Facts ¶¶ 38-40.

Keefe took the phone to the Norfolk County District Attorney's Office and downloaded the contents of the device. Id. ¶ 41. Barrett resumed patrol; a trooper returned her cell phone to her later during her shift. Id. ¶¶ 42-43.

Alfred later returned to the police station and told Barrett that he did not know what happened on July 30, but that if something had happened, it pissed him off. Pl.'s Facts ¶ 3; Def.'s Facts ¶ 44. Barrett interpreted this as meaning that Alfred would be upset if Gould had committed violence against her. Pl.'s Facts ¶ 3.

The Plainville Police Department has only one policy relating to cell phone use at work, which requires officers to have a phone number at which the Department can reach them. Pl.'s Facts ¶ 4.

[5]

Town Administrator Jennifer Thompson ("Thompson") is Plainville's sole appointing authority. Def.'s Facts ¶ 47. Alfred does not have the power or authority to terminate police officers, including Barrett, and Alfred's decisions regarding personnel actions or decisions that affect the conditions of an officer's employment are subject to review by the Board of Selectman. Id. Thompson's decisions regarding termination are also subject to review by the Board of Selectman. Id.

## II. ANALYSIS

Plainville has moved for summary judgment on count I, asserting that Barrett fails to establish a violation of her Fourth Amendment rights, Def.'s Mem. 3-5, and that the municipality is not liable regardless, because the police chief -- Alfred -- is not a final policymaker, id. at 5-7. Barrett counters that it is disputed whether the search of her phone violated her Fourth Amendment rights, Pl.'s Opp'n 2-7, and that Alfred does have final policymaking authority for the challenged action, id. at 7-8. This Court holds that Plainville fails to establish its entitlement to summary judgment.

### A. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court does not weigh the evidence, but draws all reasonable inferences

in favor of the nonmovant. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). For the movant to prevail, it must demonstrate that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmovant then has the burden of going forward with citations to specific facts which establish a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then summary judgment is not merited. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**B. Fourth Amendment Violation**

Plainville argues that Barrett cannot show a violation of her Fourth Amendment rights because it was reasonable for Alfred to require Barrett to cooperate with state troopers.[1] Def.'s Mem. 4. Barrett counters that Plainville has not shown that

---

[1] Plainville also argues that Barrett has not established a Fourth Amendment violation because the state troopers -- not Plainville -- took possession of Barrett's phone, Def.'s Mem. 5, which they would have done regardless of Alfred's actions, id. This opinion excludes an extensive discussion of these arguments because -- as Barrett successfully counters -- Alfred and Floyd's alleged actions were the instigating force in Barrett turning over her phone, Pl.'s Opp'n 5-6, and whether the state troopers would have seized Barrett's phone regardless of Alfred's actions is irrelevant, id. at 6-7.

[7]

Alfred acted reasonably, Pl.'s Opp'n 3-4, or that reasonableness is the appropriate standard, id. at 4-5. On the record before the Court, there is insufficient evidence to understand the justification for the search or to conclude that the search was reasonable, thus precluding summary judgment.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, . . . and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. This protects people against arbitrary and invasive acts by government actors, including when the government is acting as an employer. City of Ontario, Cal. v. Quon, 560 U.S. 746, 755-56 (2010). The Supreme Court has recognized, however, that government employers have special needs that "make the warrant and probable-cause requirement impracticable." Id. at 756 (citing O'Connor v. Ortega, 480 U.S. 709, 725 (1987) (plurality opinion); 480 U.S. at 732 (Scalia, J., concurring in part)). The O'Connor plurality proposed a two-step analysis to analyzing Fourth Amendment claims against government employers: first, did the employee have a reasonable expectation of privacy given the operational realities of the workplace, O'Connor, 480 U.S. at 717, and second, if the intrusion was for noninvestigatory, work-related purposes or for work-related misconduct, was it reasonable under the circumstances, id. at 725-26.

Barrett argues that Plainville has not shown that the reasonableness inquiry espoused by the O'Connor plurality applies at all, because Plainville does not set forth any facts establishing that the search was conducted for work-related purposes or as an investigation of work-related misconduct. Pl.'s Opp'n 5. Indeed, two state troopers investigated the incident, Pl.'s Facts ¶ 7; Def.'s Facts ¶ 4, not Plainville police officers; no facts establish -- nor does Plainville argue -- that this investigation was work-related in any way. In fact, Plainville fails to set forth any facts justifying the search of Barrett's phone other than a vague assertion that it was reasonable, Def.'s Mem. 4. On this incomplete record, the Court denies summary judgment.

**C. Final Policymaker**

Plainville argues that because Alfred's decisions are reviewable by the Board of Selectmen, Alfred is not a final policymaker and thus his actions cannot form the basis for imposing liability under section 1983. Def.'s Mem. 5-7. Barrett argues that Alfred was the final policymaker regarding whether Barrett was required to cooperate with state police. Pl.'s Opp'n 7-8, successfully drawing into dispute Plainville's argument for summary judgment.

Although section 1983 allows an individual to sue a municipality for a deprivation of her constitutional rights, it

[9]

does not allow for municipal liability on a respondeat superior theory. Monell v. Department of Soc. Servs., 436 U.S. 658, 690-91 (1978). Rather, the challenged action must be official policy, id. at 691 -- i.e., a formal rule or understanding or a single decision by a municipal policymaker in appropriate circumstances, Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). In City of St. Louis v. Praprotnik, 485 U.S. 112 (1988), the Supreme Court "define[d] the proper legal standard for determining when isolated decisions by municipal officials or employees may expose the municipality itself to liability under [section] 1983." Id. at 114. The Supreme Court emphasized: "[w]e have assumed that an unconstitutional governmental policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." Id. at 123 (citing Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981); Owen v. City of Independence, 445 U.S. 622 (1980)). "[T]he identification of policymaking officials is a question of state law." Id. at 124. The Supreme Court further clarified:

> the authority to make municipal policy is necessarily the authority to make final policy. When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departure from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies.

> If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

Id. at 127.

Plainville argues that under Massachusetts law, Alfred's decisions are subject to review by the town's Board of Selectmen, and that only the Town Administrator can terminate a town employee.  Def.'s Mem. 5-6.  Barrett responds that the act in question is Alfred's forcing Barrett to turn over her phone, not threatening her job.  Pl.'s Opp'n 7.  Massachusetts law gives the Board of Selectmen and the police chief parallel authority over the department:  "The selectmen may make suitable regulations governing the police department and the officers thereof.  The chief of police shall be in immediate control of all town property used by the department, and of the police officers, who shall obey his orders."  Mass. Gen. Laws c. 41 § 97.  Some of the police chief's policymaking is reviewable, Mass. Gen. Laws c. 41 § 97A ("The chief of police in any such town shall from time to time make suitable regulations governing the police department, and the officers thereof, subject to the approval of the selectmen . . . ."), but the First Circuit has recognized that a police chief is a final policymaker in certain circumstances, see Welch v. Ciampa, 542 F.3d 927, 941-42 (1st Cir. 2008) (holding that police chief's decision not to

[11]

reappoint a specialist could constitute official policy and thus a basis for the town's section 1983 liability under Pembaur). Although Barrett and Plainville do not dispute that some of Alfred's decisions are subject to review, Def.'s Facts ¶ 47; Plainville fails to carry its burden to establish that Alfred's challenged conduct was reviewable. Accordingly, this Court denies summary judgment on whether liability may be imposed on Plainville.

**III. CONCLUSION**

For the foregoing reasons, this Court DENIES Plainville's motion for summary judgment, ECF No. 39.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE